# SUPREME COURT,

## JANUARY TERM, 1873.

4 305
4 233
6 24
6 113
6 120
Continued.
6 121
17 282
21 448
20* 326
28* 387

4 305
f35 175

4 305
41 527

---

## CALEB S. TUSTIN, Appellant, v. SAMUEL D. GAUNT, Respondent.

COUNTY COURTS—JURISDICTION OF.—The Constitution of this State provides that County Courts shall be Courts of record having general jurisdiction, to be defined and limited by law; and the Legislature having given them exclusive and original jurisdiction in all matters pertaining to Probate Courts: *Held*, that County Courts, in exercising judicial powers in such business, should be regarded as Courts of general and superior jurisdiction.

IDEM—PRESUMPTIONS.—Whenever their proceedings and judgments come in question collaterally, they are entitled to all the legal presumptions pertaining to the records of Courts of superior jurisdiction.

PROCEEDINGS IN COUNTY COURT, HOW IMPEACHED.—The proceedings and judgments of County Courts in probate matters import absolute verity, and whenever they come in question collaterally cannot be impeached by evidence *aliunde* the record; but may be impeached by evidence appearing upon the face of the record showing a want of jurisdiction in the Court.

RECORD.—Under the Code the record includes all the papers and proceedings contained in the judgment-roll.

WHEN WANT OF JURISDICTION WILL APPEAR.—When the record recites what was done, and the facts so recited are not sufficient to give the Court jurisdiction, a want of jurisdiction will appear upon the face upon the record.

WHEN THE RECORD IS SILENT.—Legal presumptions do not come to the aid

VOL. IV.—20

of the record, except as to facts touching which the record is silent. When the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done. If appellant was a minor, and had no guardian when the order of sale was made, it was the duty of the Court to appoint one before making such order; but the record being silent, the law presumes the Court did its duty. No evidence *aliunde* the record will be admitted to impeach the proceedings and orders of a Court of general and superior jurisdiction.

Appeal from Yamhill County.

*W. M. Ramsey*, for Appellant.

*R. P. Boise and P. C. Sullivan*, for Respondent.

By the Court, Prim, J. :

This was an action of ejectment in the Circuit Court of Yamhill County to recover the one-eighth of one hundred and ninety acres of land situate in the county of Yamhill, State of Oregon. Caleb S. Tustin, the appellant, claims title as one of the heirs of his father, Charles S. Tustin, who died intestate in said county in the fall of 1862, seized of the land in question, leaving a widow and seven other children besides appellant.

Respondent claims title to the land under a sale made by the administrator of the estate by said Tustin, deceased, in pursuance of certain probate proceedings and orders had and made in the County Court of Yamhill County. The title of respondent depends upon the validity of those proceedings and orders of the County Court and the sale made in pursuance thereof, as it appears that appellant was entitled to the interest in question as one of the heirs of his father, unless he has been divested of the title by this sale.

Respondent, to prove title in himself, offered in evidence the record containing the order of the County Court of Yamhill County, appointing David Smith administrator of the estate of the said Tustin, deceased; and also the proceedings and orders of said Court pertaining to the sale of the land belonging to said estate, including the land in question. Appellant objected to the admission of these

proceedings, orders and sale made in pursuance thereof, as incompetent evidence to prove title in respondent, upon the ground that the Court had no jurisdiction of either the subject-matter or of the parties interested in said estate at the time they were made, as he claims, and that, therefore, they are absolute nullities.    He contends that the County Courts of this State, in exercising judicial powers in probate matters, should be regarded as Courts of inferior and limited jurisdiction, and that none of these orders and proceedings should have been admitted in evidence without first proving all the necessary facts authorizing such Courts in making such orders.    Respondent, however, contends that they are Courts of record under the Constitution, with *original* and *exclusive* jurisdiction in all *probate matters,* and in exercising judicial powers in those matters should be regarded as Courts of superior jurisdiction, and that all their proceedings, orders and judgments are entitled to all the presumptions of law pertaining to such Courts.

This presents the main question to be decided in this case, that is, whether these Courts, in exercising judicial powers in probate proceedings, should be treated as Courts of inferior or as Courts of superior jurisdiction.

This is the first time in the judicial history of this State that this Court has been called upon to decide this question.    We are aware that it has already been held by this Court in several cases heretofore decided and reported that "the County Court or Board of County Commissioners, so far as it exercises judicial powers, is a Court of special and limited jurisdiction," and, as a logical sequence, that the facts necessary to confer jurisdiction should appear upon the face of its record or its proceedings, whenever brought in question collaterally, are mere nullities.    (*Thompson* v. *Multnomah County,* 2 Ogn. 37; *State of Oregon* v. *Officer, ante,* p. 180; *Johns* v. *Marion County, ante,* p. 46.)

It appears, however, that these were all cases in which the County Court was engaged as a Board of County Commissioners, in the laying out of county roads, which was purely county business as contradistinguished from probate

business; consequently we are led to the conclusion that the Court, in the use of the language above referred to, only intended to be understood as holding that these Courts were Courts of inferior and limited jurisdiction, when exercising judicial powers in the particular class of cases then under consideration.

Section 1 of Article .VII of the Constitution provides, "That the judicial power of the State shall be vested in a Supreme Court, Circuit Courts and County Courts, which shall be Courts of record, having general jurisdiction, to be defined, limited and regulated by law in accordance with this Constitution.

"Justices of the Peace may also be invested with limited judicial powers."

Section 12 provides that "the County Court shall have the jurisdiction pertaining to Probate Courts and Boards of County Commissioners," etc.

Section 869 of the statute provides that "the County Court has the exclusive jurisdiction in the first instance pertaining to a Court of Probate," among which is enumerated the power "to grant and revoke letters of administration," and "to order the sale and disposal of real and personal property of deceased persons."

It will be seen that the same language is used in the Constitution in reference to the Supreme and Circuit Courts that is used in regard to County Courts, as to their being " Courts of record having general jurisdiction, to be defined, limited and regulated by law."

As the Constitution of the State provides that County Courts shall be Courts of *record* having *general jurisdiction,* to be defined and limited by law, and the law having fixed the limitation by giving them *exclusive* and *original* jurisdiction in *all matters* pertaining to *Probate Courts,* we conclude that, in the transaction of such business, they should be regarded as Courts of superior jurisdiction, as contradistinguished from Courts of inferior and limited jurisdiction. Having arrived at this conclusion, we are to accord to their judgments and proceedings in such matters, whenever they happen to come in question collaterally, all the

presumptions of law pertaining to the judgments and proceedings of that description of Courts.

"The true line of distinction. between Courts whose decisions are conclusive, if not removed to an Appellate Court, and those whose proceedings are nullities, if their jurisdiction does not appear on their face, is this:

"A Court which is competent, by its constitution, to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment, or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power. A Court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities." (2 How. U. S. 341.)

"A judicial record" is defined to be "the record, official entry or files of the proceedings in a Court of justice." (Civ. Code, § 719.)

These proceedings and orders of the County Court, in the matter of the estate of Tustin, deceased, are "judicial records," as they come clearly within this. definition of the Code; and whenever such a record is produced in evidence, during the progress of the trial, to establish some right in the party producing it, and is thus brought in question collaterally, it may be attacked or impeached by the opposite party, and the presumption arising therefrom overcome by evidence of a want of jurisdiction in the Court in which such record was made, for the record of any Court is absolutely void whenever it appears from such record that there was a want of jurisdiction in the Court, either over the subject-matter or parties in interest, to make such record. (Civ. Code, § 732; *Hahn* v. *Kelly,* 34 Cal. 407.)

When, however, the record of a Court of general jurisdiction comes in question, *a want* of jurisdiction cannot be

shown by evidence *aliunde* the record, and "no facts or circumstances which do not appear upon the face of what constitutes the record," designated in our Code as the judgment-roll, can be used for such purpose, for the reason that "the record of a Court of superior jurisdiction imports absolute verity, and cannot, therefore, be collaterally impeached from without." (*Hahn* v. *Kelly*, 34 Cal. 402.)

It may be asked, in this connection, what is meant by a want of jurisdiction appearing upon the face of the record. We answer that a want of jurisdiction appears upon the face of the record "whenever what was done is stated in the record, and which, having been done, is not sufficient in law to give the Court jurisdiction."

In *Hahn* v. *Kelly*, the Court said: "We consider the true rule to be that legal presumptions do not come to the aid of the record, except as to acts or facts touching which the record is *silent*. When the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done." "That the law conclusively presumes the jurisdictional facts in the case of a judgment of a Court of general jurisdiction, so long as the record shows nothing to the contrary, but does not make any such presumption in favor. of the judgments of Courts of limited jurisdiction. The jurisdiction of such Courts, not being presumed, must depend upon actual facts, which, of course, are open to dispute, and not concluded by the record, for if the jurisdictional facts did not exist, the Court really had no jurisdiction, and its record is not, in the eyes of the law, an absolute verity, but a mere unauthorized narrative." (20 Conn. 199.)

Having arrived at the conclusion that the proceedings and judgments of our County Courts in the transaction of probate business are entitled to all the legal presumptions pertaining to the proceedings and judgments of Courts of general jurisdiction, it will be necessary to apply these legal presumptions to the proceedings and orders of the County Court produced in evidence in this case, in order to determine whether such orders are valid, or whether they were mere nullities on account of a want of jurisdiction in the Court at the time they were made.

The first order produced in evidence by respondent was the order granting letters of administration upon the estate. of said Charles S. Tustin, deceased. To obtain this order under the statute in force at the time it was granted, it was necessary to file a petition showing two jurisdictional facts: first, the death of Tustin; and second, that he was an inhabitant of the county at the time of his death, both of which facts sufficiently appear from the language used in the petition filed to obtain the order, which is as follows, to wit: "The undersigned would respectfully petition the Hon. County Court of Yamhill County, Oregon, to be appointed administrator of the estate of C. S. Tustin, late of said county and State, now deceased."

We will next examine the proceedings and orders of the County Court pertaining to the sale of the realty of said Tustin, deceased, in order to ascertain whether a want of jurisdiction in the Court, either over the subject-matter or persons in interest, appears upon the face of the record. For it will be conclusively presumed that all the necessary jurisdictional facts did exist, and were made to appear to the Court, unless a want of jurisdiction appears upon the face of the record, or some portion of it.

This proceeding was had under the old statute of 1855, which provides that " when the personal estate in the hands of the administrator shall be insufficient to pay the allowance to the family, and all the debts and charges of the administration, he may sell the real estate for that purpose upon the order of the County Court. To obtain such order he shall present a petition to such Court, and if it shall appear by such petition that there is not sufficient personal estate in his hands to pay the allowance to the family, the debts of deceased and expenses of administration, and that it is necessary to sell the whole, or some portion of the real estate, the County Court shall make an order directing all persons interested in the estate to appear, at a time and place specified in the order, to show cause why such order should not be made. A copy of such order is required to be served personally on all persons interested in the estate, or be published at least four successive weeks in such news-

paper as the Court shall order. If the Court shall be satisfied, after a full hearing upon the petition and an examination of the proofs and allegations of the parties interested, that such sale is necessary for the payment of the debts, allowance to the family and expenses of administration, such order shall be granted." (Stat. of 1855, p. 360.)

It appears upon the face of this record that "the administrator, upon affidavit filed according to law, presented a petition to the Court for a license to sell the real estate of said estate," and, "it appearing to the satisfaction of the Court that there is not sufficient personal property to pay the debts of said estate, the necessary allowance to the family, and the cost of administration," etc., an order is then made directing all persons interested in said estate to appear at the time and place specified therein to show cause why such order should not be granted; also, directing this order to be published in the Oregon *Argus* for four successive weeks. The order of sale contains the further recital that this "petition came on for final hearing, and, it appearing to the Court that due notice of this hearing had been given to those interested in said estate; * * * and it further appearing necessary for the payment of the debts of the deceased that said real estate should be sold, it was therefore ordered," etc.

Thus it is seen that it not only appears upon the face of the record that the Court had jurisdiction of the subject-matter, but of the parties in interest. But it is, however, further claimed for the appellant that he was a minor at the time these proceedings were had, and that he had no general guardian, and that none was appointed for him by the Court to appear and take care of his interest in these proceedings, and therefore they are void as to him. It is true the statute requires that if any of the heirs of the deceased are minors and have no general guardian, the Court, before proceeding to act upon such petition, shall appoint some disinterested person to appear and look after the interest of such minor in such proceeding. But to this proposition we reply that the record being silent as to whether any guardian was appointed for appellant or not, "the law

presumes that what ought to have been done was not only done, but rightly done." (*Hahn* v. *Kelly*, 34 Cal. 407.)

It was further proposed, however, by counsel for appellant, to impeach these proceedings of the County Court in relation to the sale of the land in question, by offering to prove by appellant that he was a minor under eighteen years of age at the time said proceedings were had in said Court; also that he had no guardian in the county, and none was appointed for him by the Court to take care of his interest in said matter, and that no notice of said proceedings was served upon him. This proposition was very properly overruled by the Court, as no evidence *aliunde* the record could be admitted to impeach the proceedings and orders of a Court of general and superior jurisdiction.

No substantial error having been committed in the trial of this cause by the Circuit Court, it is ordered that the judgment be affirmed.